EDWARD BURNS, APPELLEE, v. LEHIGH VALLEY RAILROAD COMPANY, APPELLANT.

Submitted July 5, 1906—Decided November 12, 1906.

There being evidence tending to show that plaintiff, while upon a public bridge that was being repaired by defendant's employes, stepped upon a plank which (unknown to him) had been loosened by them in the course of such repairs, and that the plank turned under his weight and caused him to fall, sustaining personal injuries, to recover for which action was brought—*Held*, not erroneous to charge the jury that if the danger which occasioned plaintiff's injury was a hidden danger, caused by the action of the defendant, it was incumbent upon defendant to guard against such hidden danger by giving warning to or protecting a passerby who was lawfully upon the bridge.

On appeal from the First District Court of Jersey City.

Before Justices HENDRICKSON, PITNEY and TRENCHARD.

For the appellant, *Collins & Corbin.*

For the appellee, *Hamill & Egan.*

The opinion of the court was delivered by

PITNEY, J. This was an action for personal injuries in which the plaintiff recovered a verdict and judgment for $100 damages. The injuries were received through a defect in the planking of a public bridge over the Morris canal at Jersey avenue, in Jersey City. Plaintiff, on the day in question, had occasion to cross and shortly afterwards to return over the bridge as a foot passenger; it was while returning that he was injured. Employes of the defendant were at the time engaged in repairing the planking. The bridge is of the type known as a "lift draw," being hung upon hinges at one end and so arranged that the other end of the bridge may be raised until an upright position is reached. The planking runs from one side of the bridge to the other. In order to cover the gap in the planking above the hinges of the bridge an iron apron is provided, approximately sixteen feet long and eighteen inches wide, and weighing about five hundred pounds, this apron being furnished with hinges of its own to admit of its rising when the bridge is raised.

According to the plaintiff's testimony, he first crossed the bridge in safety and noticed nothing wrong with it. Having accomplished his errand he undertook to recross (having "seen the bridge was solid with me going over"), and stepped upon a loose plank near the iron apron (which at this time was raised), and fell down into an opening between the loose plank and the apron; in the fall he clutched the apron to save himself, and thereby drew it over upon him so that his leg was severely bruised.

According to the evidence on the part of the defendant the plaintiff was intoxicated at the time, and on his return across

the bridge he was helped over the open space by the foreman of the men who were at work there and led to a place of safety upon the street. Plaintiff then returned to get his dog, which had refused to cross the open space, and while plaintiff was attempting to reach over the uplifted apron he fell into the open space.

According to the undisputed evidence, defendant's employes were at work repairing the planking of the bridge nearest to the apron. Plaintiff testified that when he first crossed none of the planks had been taken out. He gives no clear account of the condition of the bridge upon his return, except to the extent that the apron was uplifted and that a plank near it was loose, so that upon his stepping on it he was precipitated into the open space next to the apron. Whether the plank turned under his weight or whether it was a short piece that "up-ended," is not clear. Defendant's evidence is to the effect that at the time the plaintiff met with his fall the three planks nearest to the apron had been removed. One of defendant's witnesses (the foreman) testified that when plaintiff first crossed none of the planks had been removed, and that before he came back the three planks had been taken out.

There was a motion for nonsuit and for direction of a verdict in defendant's favor, both based upon the grounds that there was no proof of negligence on the part of the defendant, that there was contributory negligence on the part of the plaintiff, and that the danger was obvious. These motions were, we think, properly refused, for if the plaintiff's testimony were believed none of the points was well taken. His testimony was not incredible. It was consistent with this theory (among others), that defendant's witnesses were mistaken in supposing that all three planks had been taken out of the way prior to the plaintiff's return; that in fact one or more of those planks, although loosened by the men who were at work there, had been left lying in position, and that one of these loose planks turned when the plaintiff stepped upon it and thereby caused his fall. There was also evidence that some of the planks were short pieces; one of these may

have tilted or "up-ended" under his weight. In such a state of the proofs it could not be held, as matter of law, either that the defendant was free from negligence or that the plaintiff was clearly guilty of negligence, or that the danger was obvious to him.

The only other ground of reversal is rested upon two passages in the charge of the trial judge to the jury, to each of which objection was taken at the time.

The first of these is as follows: "If the danger was a hidden one; if, as testified to on the part of the plaintiff, a plank was so placed that it was loose and liable to turn or become displaced by the weight of a man's foot, and that was not apparent to one who was passing over the bridge, then it was incumbent upon the defendant to guard against a hidden danger of that kind by giving warning or protecting a passerby who was lawfully upon the bridge." The second extract is as follows: "If the danger which occasioned his injury was a hidden danger, caused by the action of the defendant, against which they did not guard, and because of that danger which they had created and not guarded against the plaintiff was injured, he is entitled to your verdict."

It is argued that by the rule thus laid down for the guidance of the jury the defendant was made an insurer, whereas it is insisted that its legal duty was limited to the exercise of reasonable care to prevent injury to travelers. We do not agree that the instructions quoted imposed upon the defendant the liability of an insurer. What they did was to mention two specific measures of precaution, one or the other of which must be adopted in the exercise of reasonable care for the safety of passersby.

Although the first of these excerpts does not express the proviso that the loosened plank had been loosened by the servants of the defendant, this element was implied in that passage as clearly as it was expressed in the second passage quoted. The instruction is to be considered as the jury must be taken to have considered it—that is to say, as applied to the concrete facts that were in evidence before them. There was no suggestion in the evidence that if a plank was loose

and liable to turn, it had or might have become so otherwise than through the intervention of defendant's servants in their repair work upon the bridge.

The case presented to the jury's consideration, therefore, in each of the extracts, is that of a plank loosened in the course of making repairs upon a public bridge and left loose while a member of the public is using the bridge as a footway; the loosened plank, at the same time, not being apparent to him and being left as a hidden danger, without barrier or other guard, and without warning to the traveler of the danger.

Under such circumstances it is commonly said that he who is in charge of the repairs of the bridge, or responsible for its condition, is bound either to guard the place by a barrier or otherwise or else to warn approaching foot passengers. *Freeholders* v. *Hough*, 26 *Vroom* 628; 5 *Cyc.* 1101. This judicial rule has doubtless been formulated because the judicial mind has failed to conceive of any other precaution that reasonable care could suggest in such a juncture for safeguarding the traveler. So long as a hidden pitfall is permitted to remain in a traveled way or bridge while the public are using that way for passage, reasonable care has, we believe, thus far devised only two measures to prevent injury to the traveler—one is to debar the traveler's approach to the pitfall by a barrier or other guard, and the other to give him warning of the danger.

This duty is imposed upon a party who is repairing a bridge with respect to hidden dangers created in the course of such repairs, where such party is under a duty to make the repairs. If the party repairing be a mere volunteer, the responsibility results *a fortiori*. Indeed, in that event, the creation of any hidden danger in the traveled way would be the creation of a public nuisance.

The judgment under review will be affirmed, with costs.